## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| OMNOVA SOLUTIONS INC., DAVID J. D'ANTONI, JOSEPH M. GINGO, JANET PLAUT GIESSELMAN, MICHAEL J. MERRIMAN, JAMES A. MITAROTONDA, ANNE P. NOONAN, STEVEN W. PERCY, LARRY B. PORCELLATO, ALLAN R. ROTHWELL, WILLIAM R. SEELBACH, SYNTHOMER PLC, SPIRIT USA HOLDINGS INC., and SYNTHOMER USA LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on July 3, 2019 (the "Proposed Transaction"), pursuant to which OMNOVA Solutions Inc. ("OMNOVA" or the "Company") will be acquired by Synthomer plc ("Parent"), Spirit USA Holdings Inc. ("Merger Sub"), and Synthomer USA LLC, a Delaware corporation ("Parent US Sub," and collectively with Parent and Merger Sub, "Synthomer").

2.     On July 3, 2019, OMNOVA's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Synthomer.  Pursuant to the terms of the Merger Agreement, OMNOVA's stockholders will receive $10.15 in cash for each share of OMNOVA common stock they own.

3.      On September 9, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 10, 2019.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of OMNOVA common stock.

9.      Defendant OMNOVA is an Ohio corporation and maintains its principal executive offices at 25435 Harvard Road, Beachwood, Ohio 44122-6201.  OMNOVA's common stock is traded on the New York Stock Exchange under the ticker symbol "OMN."

10.     Defendant David J. D'Antoni is a director of the Company.

11.     Defendant Joseph M. Gingo is a director of the Company.

12.     Defendant Janet Plaut Giesselman is a director of the Company.

13.     Defendant Michael J. Merriman is a director of the Company.

14.     Defendant James A. Mitarotonda is a director of the Company.

15.     Defendant Anne P. Noonan is Chief Executive Officer, President, and a director of the Company.

16.     Defendant Steven W. Percy is a director of the Company.

17.     Defendant Larry B. Porcellato is a director of the Company.

18.     Defendant Allan R. Rothwell is a director of the Company.

19.     Defendant William R. Seelbach is Chairman of the Board of the Company.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21.     Defendant Parent US Sub is a Delaware limited liability company, a wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

22.     Defendant Parent is a public limited company incorporated under the Laws of England and Wales and a party to the Merger Agreement.

23.     Defendant Merger Sub is an Ohio corporation, a wholly-owned subsidiary of the Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of OMNOVA (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.     This action is properly maintainable as a class action.

26.     The Class is so numerous that joinder of all members is impracticable.  As of June 28, 2019, there were approximately 44,852,901 shares of OMNOVA common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

31.     OMNOVA is a global innovator of performance-enhancing chemistries and surfaces used in products for a variety of commercial, industrial, and residential applications.

32.     The Company is a strategic business-to-business supplier that provides *The Science in Better Brands*, with emulsion polymers, specialty chemicals, and functional and decorative surfaces that deliver critical performance attributes to top brand-name, end-use products sold around the world.

33.     The Company's sales for the last twelve months ended May 31, 2019 were approximately $760 million and the Company has a global workforce of approximately 1,900.

34.     On July 3, 2019, OMNOVA's Board caused the Company to enter into the Merger Agreement with Synthomer.

35.     Pursuant to the terms of the Merger Agreement, OMNOVA's stockholders will receive $10.15 in cash for each share of OMNOVA common stock they own.

36.     According to the press release announcing the Proposed Transaction:

OMNOVA Solutions Inc. (NYSE: OMN) today announced that it has entered into a definitive agreement to be acquired by Synthomer plc, a United Kingdom-based specialty chemical company, for $10.15 per share in cash. The Company also reported its second quarter fiscal 2019 earnings, which included the 10th consecutive quarter of year-over-year volume growth in its Specialty Solutions segment. . . .

Completion of the transaction is subject to the satisfaction of certain customary closing conditions, including the receipt of regulatory approvals, and approval from Synthomer's and OMNOVA's shareholders. The transaction is not contingent on obtaining financing and is expected to close in late 2019 or early 2020.

Advisors

Morgan Stanley & Co. LLC is acting as exclusive financial advisor to OMNOVA
Solutions and Jones Day is acting as its legal counsel.

37.     The Merger Agreement contains a "no solicitation" provision that prohibits the

Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted

unsolicited alternative proposals.  Section 5.2(a) of the Merger Agreement provides:

> Except as permitted by this Section 5.2, the Company shall not, and shall cause
> each of its Subsidiaries and their respective officers, directors and employees, and
> shall use reasonable best efforts to cause each of its consultants, agents, financial
> advisors, investment bankers, attorneys, accountants and other representatives
> (collectively, "Representatives") not to, from the date hereof until the Effective
> Time or the earlier termination of this Agreement in accordance with Article VIII,
> (i) directly or indirectly, solicit, initiate or knowingly facilitate or encourage
> (including by way of furnishing non-public information) the making of any
> proposal or offer that constitutes, or would reasonably be expected to lead to, a
> Company Takeover Proposal, (ii) engage in or otherwise participate in any
> discussions or negotiations regarding, or furnish to any Person (other than Parent
> or Merger Sub or their respective Representatives) any non-public information in
> connection with or for the purpose of encouraging or facilitating, a Company
> Takeover Proposal or (iii) enter into any letter of intent, agreement in principle,
> merger agreement, acquisition agreement or other similar agreement with respect
> to a Company Takeover Proposal (other than an Acceptable Confidentiality
> Agreement as permitted by Section 5.2(b)) (each, a "Company Acquisition
> Agreement"). Upon execution of this Agreement, the Company shall, and shall
> cause its Subsidiaries and its and their respective Representatives to, (A)
> immediately cease and cause to be terminated all discussions or negotiations with
> any Person conducted prior to the date of this Agreement with respect to a Company
> Takeover Proposal or any inquiry or proposal that would reasonably be expected to
> result in or lead to a Company Takeover Proposal, (B) promptly request each
> Person, if any, that has executed a confidentiality agreement in respect of a
> Company Takeover Proposal to return or destroy all information heretofore
> furnished to such Person or its Representatives by or on behalf of the Company or
> any of its Subsidiaries and (C) promptly terminate all physical and electronic data
> room access previously granted to any such Person or its Representatives. From the
> date of this Agreement until the Effective Time, the Company shall not terminate,
> amend, modify or waive any provision of any "standstill" or similar agreement to
> which the Company or any of its Subsidiaries is a party and shall enforce the
> provisions of any such agreement; provided that the Company shall be permitted to
> fail to enforce any provision of any "standstill" or similar obligation of any Person

to permit such Person to make a Company Takeover Proposal confidentially to the Company Board if the Company Board or any duly constituted and authorized committee thereof determines in good faith, after consultation with its financial advisor and outside legal counsel, that failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law.

38.    Additionally, the Company must promptly advise Synthomer of any proposals or inquiries received from other parties.  Section 5.2(c) of the Merger Agreement states:

The Company shall promptly (and, in any event, within 48 hours) notify Parent if any proposals or offers with respect to, or that would reasonably be expected to lead to, a Company Takeover Proposal are received by the Company or any of its Representatives, and shall include with such notice, the name of such Person and the material terms and conditions of such proposals or offers (including, if applicable, copies of any written requests, proposals or offers, including draft agreements) and thereafter shall keep Parent reasonably informed, on a reasonably current basis (but in no event more than once every 48 hours), of the status and terms of any such proposals or offers (including any amendments thereto and any draft agreements) and any related discussions or negotiations. The Company agrees that the Company and its Subsidiaries will not enter into any Acceptable Confidentiality Agreement with any Person subsequent to the date hereof that prohibits the Company from providing any information to Parent as required by this Section 5.2.

39.    Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Synthomer a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.2(d) of the Merger Agreement provides:

Except as expressly permitted by this Section 5.2(d) or by Section 5.2(e), neither the Company, the Company Board nor any committee thereof shall (i) (A) fail to include the Company Recommendation in the Company Proxy Statement, (B) change, qualify, withhold, withdraw or modify, or publicly propose to change, qualify, withhold, withdraw or modify, in a manner adverse to Parent, the Company Recommendation, (C) make any recommendation or public statement in connection with a tender offer or exchange offer other than a recommendation against such offer or a customary "stop, look and listen" communication (it being understood that the Company Board may refrain from taking a position with respect to a Company Takeover Proposal until the close of business as of the tenth Business Day after the commencement of a tender offer in connection with such Company Takeover Proposal pursuant to Rule 14d-9(f) under the Exchange Act without such action being considered a Company Recommendation Change) or (D) approve or

recommend, or publicly propose to approve or recommend to the Company Shareholders, a Company Takeover Proposal (the actions described in this clause (i) being referred to as a "Company Recommendation Change") or (ii) authorize, cause or permit the Company or any of its Subsidiaries to enter into any Company Acquisition Agreement. Notwithstanding anything to the contrary set forth in this Agreement, prior to the time the Company Shareholder Approval is obtained, the Company Board or any duly constituted and authorized committee thereof may, in response to a Company Takeover Proposal, either (1) make a Company Recommendation Change or (2) cause the Company to enter into a Company Acquisition Agreement providing for a Superior Proposal and concurrently terminate this Agreement pursuant to Section 8.1(c) if, in the case of clause (1) or (2), the Company Board or any duly constituted and authorized committee thereof has determined in good faith, after consultation with its financial advisor and outside legal counsel, that (1) the failure to do so would be inconsistent with the directors' fiduciary duties under applicable Law and (2) such Company Takeover Proposal constitutes a Company Superior Proposal; provided, however, that prior to taking such action, (w) the Company has provided Parent a copy of such Company Takeover Proposal and has given Parent at least four Business Days' prior written notice of its intention to take such action, (x) if Parent requests, the Company has negotiated, and has directed its Representatives to negotiate, in good faith with Parent during such notice period to enable Parent to propose in writing an offer binding on Parent to effect revisions to the terms of this Agreement such that it would cause such Company Superior Proposal to no longer constitute a Company Superior Proposal, (y) following the end of such notice period, the Company Board or any duly constituted and authorized committee thereof shall have considered in good faith Parent's binding offer, and shall have determined that the Company Superior Proposal continues to constitute a Company Superior Proposal if the revisions proposed in Parent's binding offer were to be given effect and the failure to make such determination would be inconsistent with the directors' fiduciary duties under applicable Law and (z) in the event of any material change to the material terms of such Company Superior Proposal, the Company shall, in each case, have delivered to Parent an additional notice consistent with that described in clause (w) above and the notice period shall have recommenced, except that the notice period shall be at least two Business Days (rather than the four Business Days otherwise contemplated by clause (w) above).

40.    The Merger Agreement also provides for a "termination fee" of $15.8 million payable by the Company to Synthomer if the Individual Defendants cause the Company to terminate the Merger Agreement.

*The Proxy Statement Omits Material Information*

41.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction, which scheduled a stockholder vote on the Proposed Transaction for October 10, 2019.

42.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

43.     First, the Proxy Statement omits material information regarding the Company's financial projections.

44.     The Proxy Statement fails to disclose: (i) all line items used to calculate EBITDA; (ii) unlevered free cash flow for all sets of projections and all underlying line items; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

45.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

46.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Morgan Stanley & Co. LLC ("Morgan Stanley").

47.     With respect to Morgan Stanley's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the fully diluted share count as provided by OMNOVA; (ii) the individual inputs and assumptions underlying the ranges of discount rates from 8.3% to 9.3% and 12.6% to 14.6%, and the perpetual growth rate ranging from 0.00% to 1.25%; and (iii) the terminal values of the Company.

48.     With respect to Morgan Stanley's Discounted Equity Value Analysis, the Proxy Statement fails to disclose: (i) Morgan Stanley's basis for applying an AV/NTM EBITDA multiple range of 6.5x to 7.5x; (ii) OMNOVA's projected fully diluted share count; and (iii) the individual inputs and assumptions underlying the discount rate of 13.6%.

49.     With respect to Morgan Stanley's Illustrative Leveraged Buyout Analysis, the Proxy Statement fails to disclose Morgan Stanley's basis for selecting the leverage multiple, financing terms, exit multiple, and target internal rate of return used in the analysis.

50.     With respect to Morgan Stanley's Equity Research Analysts' Price Target Analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Morgan Stanley in the analysis; and (ii) the sources thereof.

51.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

52.     Third, the Proxy Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

53.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

54.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy

Statement: (i) Background of the Merger; (ii) Recommendation of the OMNOVA Board; (iii) Reasons for the Merger; (iv) Certain OMNOVA Unaudited Prospective Financial Information; and (v) Opinion of Morgan Stanley & Co. LLC.

55.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and OMNOVA**

56.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  OMNOVA is liable as the issuer of these statements.

58.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Synthomer**

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants and Synthomer acted as controlling persons of OMNOVA within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of OMNOVA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66.     Each of the Individual Defendants and Synthomer was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and

exercised the same.   The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly involved in the making of the Proxy Statement.

68.     By virtue of the foregoing, the Individual Defendants and Synthomer violated Section 20(a) of the 1934 Act.

69.     As set forth above, the Individual Defendants and Synthomer had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.   As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for

plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

<u>**JURY DEMAND**</u>

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: September 17, 2019                    **RIGRODSKY & LONG, P.A.**

                                         By:   */s/ Gina M. Serra*
                                               Brian D. Long (#4347)
**OF COUNSEL:**                                Gina M. Serra (#5387)
                                               300 Delaware Avenue, Suite 1220
**RM LAW, P.C.**                               Wilmington, DE 19801
Richard A. Maniskas                            Telephone: (302) 295-5310
1055 Westlakes Drive, Suite 300                Facsimile: (302) 654-7530
Berwyn, PA 19312                               Email: bdl@rl-legal.com
Telephone: (484) 324-6800                      Email: gms@rl-legal.com
Facsimile: (484) 631-1305
Email: rm@maniskas.com                         *Attorneys for Plaintiff*